NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

KAELYN W., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, A.W., *Appellees.*

No. 1 CA-JV 22-0165
FILED 2-2-2023

Appeal from the Superior Court in Maricopa County
Nos.  JD39608
JS21179
The Honorable Sam J. Myers, Judge

**AFFIRMED**

COUNSEL

David W. Bell, Attorney at Law, Mesa
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee, Department of Child Safety*

---

**MEMORANDUM DECISION**

---

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Brian Y. Furuya and Judge Paul J. McMurdie joined.

---

**C A M P B E L L**, Judge:

**¶1**         Kaelyn W. ("Father") appeals the termination of his parental rights to Anna based on abandonment grounds.[1] *See* A.R.S. § 8-533(B)(1). He challenges the superior court's failure to consider his prior support and contact with Anna, the reunification services offered, and the court's findings that termination was in Anna's best interests. Because the termination order is supported by reasonable evidence, we affirm. *See Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009).

**BACKGROUND**

**¶2**         Father and Sausha M. (Mother)[2] are the parents[3] of Anna, born in October 2019. Mother also has two other children, James and Zoe (siblings), both having different biological fathers.[4]

**¶3**         In July 2020, the Department of Child Safety (DCS) took Anna and her siblings into temporary physical custody following an incident where a DCS case manager found James alone in the street. The case manager subsequently observed that the children were inadequately cared for and were often left alone and unsupervised. DCS determined that an in-home placement was impossible because DCS could not identify a responsible adult, and the whereabouts of the fathers were unknown. Consequently, DCS placed the children in a licensed foster placement.

**¶4**         DCS contacted Father a few days later in Missouri, where he lives. He explained he last saw Anna approximately a month earlier. He was unaware Mother had taken Anna to Arizona, as she had told him she

---

[1]    We use pseudonyms to protect the identities of the minor children.
[2]    The superior court terminated both Mother and Father's parental rights.
[3]    Paternity of Anna has not been established. Father is allegedly Anna's biological father.
[4]    Neither Mother nor the other fathers are party to this appeal.

was moving to California. He also told DCS when Mother lived in Missouri she would bring Anna for visitation twice a week, and he helped support the children while they lived in Missouri.

¶5        DCS then filed a Dependency Petition and Petition for Paternity and/or Child Support, alleging, as relevant here, that Anna was dependent because of neglect by both Mother and Father. DCS specifically alleged that Father was unwilling to provide proper and effective parental care and control by failing to provide for Anna's basic needs, having no contact with her for at least six months, not providing financial support, and not reaching out to DCS regarding Anna's care and wellbeing. The superior court held a dependency hearing regarding Father in August 2020. He failed to appear. The court found Anna dependent regarding Father. The court also determined foster care placement remained necessary for Anna's welfare. In a September 2020 hearing, the court also found Anna dependent as to Mother.

¶6        Maternal Great Grandmother filed a Motion to Intervene as a potential permanent guardian in December 2020. The superior court consequently ordered that the children be placed in kinship foster care with Maternal Great Grandmother in May 2021.

¶7        The case plan was initially family reunification. But in May 2021, the Foster Care Review Board (the Board) recommended changing Anna's case plan to severance because the parents failed to correct the problems leading to removal. The Board found that Anna's parents were not in contact with DCS and were not participating in services. At that time, Father's whereabouts were unknown. In July 2021, the court changed the plan to severance and adoption at DCS's request. Father had not contacted DCS for over six months. He had not made any progress towards completing services, had not completed the out-of-state paternity test requested by DCS, and had not attended any parenting classes. DCS also offered him virtual visitation, but he had not contacted DCS to set up the visits. DCS moved to terminate Father's parental rights based on the (1) abandonment ground and (2) fifteen months in an out-of-home placement ground. *See* A.R.S. § 8-533(B)(1), (8)(c).

¶8        After a contested termination hearing in which both Father and a DCS case worker testified, the superior court terminated Father's parental rights based on the abandonment ground. *See* A.R.S. § 8-533(B)(1). The court found DCS failed to prove the fifteen months in an out-of-home placement ground. The court also found that terminating Father's rights was in the best interests of Anna because termination would benefit her,

maintaining the parent-child relationship would be detrimental, and she was placed with siblings, which would maintain their familial relationships. Father timely appealed.

## DISCUSSION

**¶9** A parent's right to custody, while fundamental, is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11–12 (2000). Relevant here, the superior court may terminate a parent's rights if it finds by clear and convincing evidence that a parent has abandoned their child. *See* A.R.S. § 8-533(B)(1). "Clear and convincing" means the grounds for termination are "highly probable or reasonably certain." *See Kent K. v. Bobby M.*, 210 Ariz. 279, 284–85, ¶ 25 (2005). The court must also find that severance is in the child's best interests by a preponderance of the evidence. *Id.* at 288, ¶ 41.

**¶10** This court "will accept the [superior] court's findings of fact unless no reasonable evidence supports those findings, and we will affirm a severance order unless it is clearly erroneous." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). This court does not reweigh the evidence but "look[s] only to determine if there is evidence to sustain the court's ruling." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

## I.    Abandonment

**¶11** Father argues the superior court erred by finding he abandoned Anna. He asserts that the court limited its focus to Father's lack of financial support and minimal contact with Anna, while ignoring factors unique to this case, such as Father's support of Anna before Mother removed her from Missouri and took her to Arizona.

**¶12** As defined by statute,

> "Abandonment" means the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

A.R.S. § 8-531(1). Abandonment is measured by a parent's conduct, not by his subjective intent. *Michael J.*, 196 Ariz. at 249, ¶ 18. "[T]he statute asks whether a parent has provided reasonable support, maintained regular contact, made more than minimal efforts to support and communicate with the child, and maintained a normal parental relationship." *Id.* at 249–50, ¶ 18. At issue is "whether the parent has taken steps to establish and strengthen the emotional bonds linking him . . . with the child." *Kenneth B. v. Tina B.*, 226 Ariz. 33, 37, ¶ 21 (App. 2010).

¶13 Reasonable evidence supports the superior court's findings that Father abandoned Anna. Father last provided financial support for Anna when she was in Missouri in June 2020. Although he was informed that Anna was in DCS custody in July 2020, he did not send Anna any cards, letters, gifts, or support. Aside from a single video contact in November of 2021, he also had no contact with Anna. He testified that he instead relied on his mother to communicate with Maternal Great Grandmother and Anna. Further, despite knowing Anna had been with Maternal Great Grandmother since November 2021, he made no attempts to visit her or take steps necessary to have her placed in his care.

¶14 Father invites us to reweigh the evidence regarding whether his contact with Anna was sufficient. But because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts[,]" *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004), we will not reweigh the evidence, *Mary Lou C.*, 207 Ariz. at 47, ¶ 8.

¶15 The superior court properly focused on Father's lack of support and minimal contact with Anna in reaching its conclusion. *See* A.R.S. § 8-531(1). Overall, reasonable evidence supports the court's finding that Father abandoned Anna based on his minimal efforts to establish and strengthen his bond with her during the dependency.

¶16 Father also argues that DCS made no real efforts to assist him in reunification with his daughter. For example, he contends that DCS should have initiated an Interstate Compact request to determine whether Anna could be safely placed in Father's care. But previously, Father demanded a paternity test before he would participate in DCS services. DCS referred him for an out-of-state paternity test—but Father never completed this testing. Father argues DCS requested he take parenting classes with no basis to suggest he needed them, and DCS did not send him service letters to "outline their specific requests to him to facilitate the

reunification with his child." DCS offered Father virtual visitation and requested that he seek parenting classes. Father did neither.

**¶17** "The burden to act as a parent rests with the parent, who should assert his legal rights at the first and every opportunity." *Michael J.*, 196 Ariz. at 251, ¶ 25. Here, Father did not meet his burden to maintain a normal parental relationship. *See* A.R.S. § 8-531(1). The superior court found that Father had no regular contact with Anna, provided no support, and "demonstrated no parental supervision or any semblance of a regular parent/child relationship." Clear and convincing evidence in the record supports the court's conclusion.

**¶18** Father also argues he had difficulty communicating with DCS because of changing case managers and alleges that it is unfair to place the burden on an out-of-state father in these circumstances. If "circumstances prevent the . . . father from exercising traditional methods of bonding with his child, he must act persistently to establish the relationship however possible and must vigorously assert his legal rights to the extent necessary." *Pima Cnty. Juv. Severance Action No. S-114487*, 179 Ariz. 86, 97 (1994). The record does not demonstrate that Father acted persistently or vigorously to shoulder his parental duties to Anna, particularly since she was located out-of-state. To the contrary, although Father was represented by counsel from around September 2021 onwards, he did not ask his attorney for help in contacting DCS or arranging to provide for Anna financially. He also knew Anna had been with Maternal Great Grandmother since at least November 2021 and knew how to contact Maternal Great Grandmother, but still did not make effort to communicate or provide support. The superior court found that DCS proved Father abandoned Anna by clear and convincing evidence, and substantial evidence supports the court's conclusion.

## II.    Best Interests

**¶19** Father argues the superior court did not properly consider the totality of the circumstances in making its best-interests finding. Father contends that finding a child is in an adoptive placement is not enough to meet the best-interests standard, and there is no evidence to suggest Father cannot provide appropriate care for Anna.

**¶20** Before the superior court terminates a parent's rights, it must find that termination is in the child's best interests by a preponderance of the evidence. *See* A.R.S. §8-533(B); *Kent K.*, 210 Ariz. at 281–82, 288, ¶¶ 7–8, 41. "[A] determination of the child's best interest must include a finding as

to how the child would benefit from a severance *or* be harmed by the continuation of the relationship." *Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990). The court may consider whether "1) an adoptive placement is immediately available; 2) the existing placement is meeting the needs of the child[]; and 3) the [child is] adoptable." *Jessie D. v. Dep't of Child Safety*, 251 Ariz. 574, 583, ¶ 27 (2021) (citation omitted).

**¶21** Here, the record supports the superior court's finding that terminating Father's parental rights is in Anna's best interests. The court found that termination would benefit Anna because "there is no parent that has demonstrated any ability to care for [her], support [her,] or meet [her] needs." The court also found that maintaining the parent-child relationship "would be detrimental to [Anna] because it would prolong [her] uncertainty and lack of stability."

**¶22** Moreover, the superior court found that Anna's current kinship placement, Maternal Great Grandmother, was meeting all of Anna's needs and was willing to adopt her and provide permanency. It also considered the fact that siblings were all placed together, "which maintains their sibling relationships." "When a current placement meets the child's needs and the child's prospective adoption is otherwise legally possible and likely, a [superior] court may find that termination of parental rights, so as to permit adoption, is in the child's best interests." *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 12 (2016). The court went on to find that Anna was otherwise adoptable if Maternal Great Grandmother could not adopt.

**¶23** Father asserts the court overlooked "[t]he fundamental importance of [Father's] parental relationship." "[O]nce the court finds that a parent is unfit, the focus shifts to the interests of the child as distinct from those of the parent." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150, ¶ 12 (2018) (internal quotation and citation omitted). The focus of the court's best-interests analysis is "the child's interest in stability and security[.]" *Jessie D.*, 251 Ariz. at 583, ¶ 27 (internal quotation and citation omitted).

**¶24** The superior court properly considered Father's efforts to parent Anna and found that he had not demonstrated the ability to care for or support the child. The court also found that termination was in Anna's best interests providing her stability and security, as Maternal Great Grandmother was willing to adopt her and provide her with permanency. Reasonable evidence supports the court's findings, and we will not reweigh the evidence on appeal. *See Mary Lou C.*, 207 Ariz. at 47, ¶ 8.

## CONCLUSION

**¶25** For the reasons above, we affirm the superior court's order terminating Father's parental rights.



AMY M. WOOD • Clerk of the Court
FILED:  AA